LAURA E. DUFFY
United States Attorney
Scott T. Jones
Assistant U.S. Attorney
Washington State Bar No. 44635
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8248
Fax: (619) 546-0510
Email: Scott.Jones@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 15CR-1632-CAB |
|---|---|
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS TO: |
| v. | (1) COMPEL DISCOVERY AND (2) GRANT LEAVE TO FILE FURTHER MOTIONS |
| CHRISTOPHER BATLINER, aka "Dylan," aka "dyl1669," aka "dyl1769," aka "dyl1768," aka "dyl1779" | AND MOTION FOR RECIPROCAL DISCOVERY |
| | Date: July 17, 2015 Time: 10:30 a.m. |
| Defendant | |

The UNITED STATES OF AMERICA, by and through its counsel, Laura E. Duffy, United States Attorney, and Scott T. Jones, Assistant United States Attorney, hereby files its Response to Defendant's motions and its own motion for reciprocal discovery.

1

# I.

# STATEMENT OF THE CASE

A. **Procedural History**

On December 6, 2013, Magistrate Judge Nita L. Stormes found probable cause to believe that evidence of the possession of child pornography would be found at Defendant's residence and signed a warrant authorizing a search of that location. The warrant was executed on December 12, 2013.

On January 14, 2014, federal agents filed a sealed complaint charging Defendant with possession of images of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. ' 2252(a)(4)(B) and destruction of evidence, in violation of 18 U.S.C. § 2232(a). On February 18, 2014, Defendant waived indictment and consented to the filing of information charging him with the same offenses. He entered a not guilty plea the same day in case #14CR-357-CAB.

On March 19, 2015, Defendant filed a motion to suppress all evidence obtained as a result of the execution of the search warrant. A hearing on that motion was held on April 27, 2015. The Court denied the motion in a written order issued on April 29, 2015.

On June 18, 2015, federal agents issued a complaint charging Batliner with attempted coercion of a child for criminal sexual activity and making a notice or advertisement offering to receive, distribute, or exchange child pornography. He was arrested the next day, pursuant to a warrant signed by Magistrate Judge Nita L. Stormes at the time the complaint was filed.

Also on June 19, 2015, a federal grand jury issued an indictment charging Batliner with attempted coercion of a child for criminal sexual activity, in violation of Title 18, U.S.C., Sec. 2422; making a notice or advertisement offering to receive, exchange, or distribute child pornography, in violation of Title 18, U.S.C., Sec. 2251(d)(1); attempted distribution of child pornography, in violation of Title 18, U.S.C., Sec. 2252(a)(2) and (b); possession of child pornography, in violation of Title 18, U.S.C., Sec. 2252(a)(4)(B);

1 and removal of property to prevent a lawful seizure, in violation of Title 18, U.S.C., Sec. 2232(a).

**B.  Statement of Facts**

  **i.  The initial investigation**

In May 2013, HSI agents and Postal Inspectors in the Eastern District of Louisiana executed a search warrant on a residence. Analysis of the computers seized showed that the resident of the home was the administrator of three websites dedicated to the production and distribution of child pornography. Many of the more than 7,000 videos found on the websites were of adolescent males masturbating in front of a webcam – members of the websites would apparently pose as underage girls, "meet" boys of similar age on social media, and then entice the boys to produce the videos by sending them sexually explicit "bait" videos of an underage girl and asking the boys to reciprocate.

One of the websites allowed users to post comments about the videos. The system was configured to automatically send the administrator an email when a user wanted to do so, so that he could approve or reject the comment. The emails (many of which were still on the seized computers) specified which video the comment regarded and included the user name, email address, and Internet Protocol (IP) address from which the user reached the site. No verification of the user name or email address was required, so many of them appear to be bogus. The IP addresses, however, were recorded by the system, not input manually by users. Unless a user posted a comment through a third-party IP anonymizer, his true IP address would be in the email the administrator received.

One of those IPs, used by a "cb" to post graphic comments to three videos in February 2013, was registered to Christopher Batliner at an address in San Marcos.

  **ii.  The search warrant**

After confirming through utility subpoenas and postal records that a "Christopher Batliner" resided at the address to which the IP address was registered, agents obtained a

warrant to search the property for evidence of possession, distribution, and receipt of child pornography.

Agents executed the search warrant on December 12, 2013. Batliner, his two female roommates and a boyfriend of one of the roommates were in the residence when the agents arrived. After waiving his Miranda rights, Batliner identified a number of the computers in the residence as his, including a Sony Vaio laptop that – when first seen by the agents – had a black San Disk thumb drive plugged into one of its USB ports. Batliner also said that he was employed part-time setting up computer servers for a software company and that he had set up residence's wireless network. He denied interest in child pornography and use of the "Tor" anonymous internet routing network, which is commonly used by child pornography traders. The roommates and the visiting boyfriend were also interviewed. They all said that the residents of the house did not use each other's computers.

Two agents asked Batliner to accompany them outside for an interview while the search was conducted. He agreed, and was allowed to retrieve a pair of shoes located near the Sony Vaio laptop. The interviewing agents then walked Batliner to the apartment complex's clubhouse to conduct the interview. During the walk, one of the agents saw Batliner brush his hand over a decorative bush and heard a noise, but didn't find it significant. During the interview, the agents conducting the search contacted the interviewing agents and told them that the thumb drive previously seen in the Vaio laptop had disappeared. The agent who saw Batliner brush his hand over the bush returned to it and found the thumb drive on the ground. Batliner then requested the presence of an attorney. Eight computers and a number of memory devices, including the vanishing thumb drive, were seized.

### iii. The forensic analysis

All the seized computer media were searched. The Vaio laptop contained three videos that may be child pornography – the individuals depicted appear to be somewhere between fourteen and nineteen years old. More importantly, the laptop contained a trove

of evidence that it had been connected to the thumb drive and used to view child pornography, including thumbnail images of several contraband videos found on the thumb drive and the names of two likely child pornography videos ("2Yo-Boy-Toddler-Saatam-Boy-Pedo-2-witch-Sound-1.m4v" and "pthc Raamat boy Hel-lo 2-sec.avi") in the "My Recent Documents" folder. "Pthc" is a common term among pedophiles. It stands for "pre-teen hard core." The examiner also determined that "chris" was logged into the laptop, and cbatliner@ramseysolutions.com logged into Gmail, when the laptop was seized. He also found (contrary to Batliner's denial) a Tor program loaded on the computer. The examiner found none of the usual evidence of distribution or receipt – presumably because Batliner effectively removed it before the search.

The thumb drive contained more than 1,000 child pornography videos, including some depicting the anal rape of toddlers. Most of the victims portrayed in the videos appear to be less than three years old. The thumb drive also contained (1) the full text of one of the comments that Batliner posted to the Louisiana website; (2) text files listing child pornography websites and logon information and passwords for the websites; (3) evidence of the use of the Tor and Gigatribe file sharing programs; and (4) irrefutable proof of Batliner's possession of the thumb drive – a complete video entitled "Ramona Batliner's Retirement Tribute," which was stored in a file named "\Downloads…\Anal Trains\." Ramona is Batliner's mother. He is in the retirement video.

Pursuant to the Court's order, the defense was given unfettered access to the thumb drive. Josiah Roloff, an expert retained by the defense, conducted an examination of the thumb drive on February 17, 2015.

### iv. The chat logs

On or about May 12, 2015, the Government began preparing its case for trial. In doing so, it discovered – on the thumb drive to which the defense had previously been given unfettered access – approximately 850 pages of recorded online chat conversations. The chats are logs of conversations conducted in 2011 using mIRC, a Windows client for Internet Relay Chat. The logs show the name of each room the user entered; most of the

IP addresses used to connect to the rooms1;  and the date, time, and content of the postings. The sample below is representative of the first several hundred pages of the logs, all of which are from group chat rooms.

```
Session Start: Sat Oct 08 22:45:13 2011
Session !dent: #Littleboysexchannel
03[22:45] *Now talking in #Littleboysexchannel
03[22:45] *Topic is 'I 1,1 Welcome to fantasy sex chat! 9,1Bl's find boys undies are always 1/2 off! ll,lJoin our pedo galaxy, 7, lclick
03[22:47] * jimmyl993 sets mode: +I 55
03[22:48] * Alex37 (-alexl9@c-75-70-48-223.hsd1.co.comcast.net) has joined #Littleboysexchannel
06[22:48] * dyll769 yawns
```

The final two thirds of the logs are from individual chats between Batliner and other users. Most of the inculpatory messages are from these individual chats. The sample below is representative.

```
01[22:49] <dyll769> oooo, what kind of perverted chat? O_o
[22:49] <Aiex37> Any kind. What u into?
01[22:49] <dyl1769> boys, 4-12
01[22:49] <dyl1769> u?
[22:50] <Aiex37> Same. Do much with them?
01(22:50] <dyl1769> just a little with some relatives
01[22:50] <dyl1769> u? :)
[22:51] <Alex37> A few.
01[22:51] <dyl1769> nice!
01 [22:51] <dyl1769> who were they?
[22:52] <Aiex37> a friend of mine's son and a few of his school friends
01[22:52] <dyll769> oooo awesome :D
01 [22:52] <dyl1769> was the dad in to it too?
[22:53] <Alex37> Yeah. He's the one that offered the kid up to me
01 [22:53] <dyl1769> haha, damn, lucky :0
01(22:53] <dyl1769> incest is hot as fuck
```

---

1 The program allows users to hide their IP address, but many did not do so.

### a. Batliner's user names

Batliner used five user names, four of which are single-digit variations on the "dyl1769" user name in the above samples. It is clear that those five users are Batliner – aside from the similarity of four, the comments of the users are both consistent and unique to Batliner. Each of his user names, for example, describes the molestation of a nephew in explicit detail, frequently using a particularly unique phrase ("If you put a frog in hot water, he'll jump out. But if you put a frog in cool water and turn up the flame, he'll stay in there until he boils") to describe the proper way to begin to molest a child. That phrase is also in the letter of apology and confession Batliner wrote to his brother after he was confronted with the molestation. In various chats, each of the "dyl____" names describes either Batliner's appearance and age, his nephews' appearances and ages, or the structure and unique characteristics of his family, like the fact that his brother has security cameras in several locations inside his house.

### b. Batliner tries to coerce a child for sex

In a series of conversations beginning in September, 2011, Batliner tried to convince another user ("dadof2boys") to move from Texas to California so that they could first train, and then molest, the user's three- and five year-old sons. The initial texts could – at a stretch – be portrayed as mere fantasy:

```
Session Start: Wed Sep 28 21:25:41 2011
Session !dent: dadof2boys
01[21 :25] <dyll769> sup :)
…[21 :26] <dadof2boys> stroking a lil and think:in about my 2 sons
01 [21 :26] <dyll769> nice
01 [21 :26] <dyl1769> how old?
[21 :27] <dadof2boys> 3yo and 5yo .... im 28 widower u?
01 [21 :27] <dyll769> ohhhhhhhh hot
01[21:27] <dyll769> 31 single
01 [21 :27] <dyll769> man, those are the fucking perfect ages too
…01 [21 :27] <dyl1769> they're so horny at that age and willing to please :)
01 [21 :28] <dyll769> nice
[21 :28] <dadof2boys> would you be able to train them to want dicks?
01[21:28] <dyll769> absolutely
…[21 :29] <dadof2boys> :) would love you to train them both/
```

Later conversations, however, make clear that Batliner is quite serious:

> [21:51] <dadof2boys> maybe we could come visit u sometime then
> 01[21:51] <dyl1769> anytime:)
> [21:52] <dadof2boys> for real?? you would help train us?
> 01[21:52] <dyll769> sure
> 01 [21:52] <dyl1769> where you from anyway?
> [21:52] <dadof2boys> texas but can travel real easy
> [21:52] <dadof2boys> u?
> 01 [21:52] <dyll769> california :)
> [21:53] <dadof2boys> hot could we stay a while?
> 01 [21:53] <dyll769> yeah I think so.
> …01[21:56] <dyll769> I could also come there if you ever wanted me to
>
> 0l [11:57] <dyll768…have you ever seriously considered moving out here? I mean this is clearly a dream of yours
> 01 [11:57] <dyl1768> and it's important to persue your dreams
> 01 [ 11:57] <dyl1768> not just keep them fantacies
> 01 [ 11:57] <dyl1768> you will become so much closer to your boys
> [11:57] <dadof2boys> i am very SERIOUSLY thinking about it this December or maybe sooner
> 01[11:57] <dyll768> :D…well listen, before we do this, it would be wise for us to first talk with each other on mic…and also for me to talk to the boys too if you don't mind…then we'll know everything is legit…I'd be happy to show myself on cam too… you could say I'm his uncle dylan, and me and him can talk about stuff so I can get an idea of his likes/rewards and dislikes/punishments as well as his interests. It would be essential for me to really make a plan of action.

He later becomes fairly insistent that "dadof2boys" allow him to see and video-chat with the sons, taking the substantial steps of providing his skype information and eventually sending a link to an audio headset for sale on Amazon he wants the boys to use:

> 01 [22:07] <dyll769> like I said, boys want to learn sex games, they're just waiting to be taught…;)
> 01 [22:08] <dyl1769> you have to establish a real level of trust
> 01 [22:09] <dyl1769> here's skype: brtp://downJoad.cnet.com/Skype/3000-2349 4-1 0225260.htrnl?tag=mncol;2
> 01 [22:09] <dyl1769> my user name is dylanjohnson6992

...
01[19:48] <dyll769> here, first step is simple: http://www.amazon.com/Logitech-Headset-Premium-Laser-Tuned-981-000     195/dp/B003NREDG4/ref=sr    _1_1 ?ie=UTF8&qid= 132089684 7 &sr=8-1 2
01 [ 19:48] <dyll769> I'm always on skype

### c.  Batliner posts a notice seeking to receive child pornography

Batliner repeatedly asks other users for the "Andy&Man" series of child pornography videos and offers his videos in exchange. He also suggests that the trades be made via "giga," likely referring to GigaTribe, a peer-to-peer file sharing network that allows users to restrict access to their encrypted files to a group of trusted friends.

The content of the chats makes clear that Batliner believes that the material he wants to obtain is (1) child pornography and (2) illegal:

[06:46] <gigaboy> trade?
…
01 [06:56] <dyll768> sure maybe. got anything good?
01 [06:56] <dyl1768> what you in to?
[06:57] <gigaboy> boys only
[06:57] <gigaboy> 7-12
01 [06:57] <dyl1768> oh cool, same…do you have anything from the andy & man series?... how many vids you got total?:)
[06:59] <gigaboy> all the nasty things most guys my age think of doin with chicks, i can only think of doing with a boy….lots
01[07:00] <dyl1768> lol ya I know how you feel
OI [07:00] <dyl1768> I wanna eat out a boy pussy, not a girl pussy
(07:00) <gigaboy> if im gonna trade i gotta go to another part of the city (im in my car, driving around, stealing random wireless)… the only way ill ever trade
…
01[07:01] <dyl1768> how easy is it to find a signal?... I'm always using my neighbors wireless…so I feel ya
[07:02] <gigaboy> not safe dude
01 [07:02] <dyll768> hey do you have any vids with Andy in the name?
[07:02] <gigaboy> if you're downloading or uploading anything illegal
[07:02] <gigaboy> not safe
01 [07:03] <dyll768> how so? it's as safe as you can get;)
[07:03] <gigaboy> thats too close to home

---

2 The link is still valid. Amazon describes the headset as ideal for "crystal-clear Internet calls with [optimized] audio for PC or Mac calling, music and gaming."

…
01[07:03] <dyll768> I live in a college community, there's like 25 wireless routers around me
01[07:03] <dyl1768> half of them are unsecure
01[21:30] <dyll768> hey do you have anything from the andy & man series by the way?...that's my favorite series and I've been looking for more of it.
…01[21:31] <GigaBoy19> andy and man not sure.. what is it
01[21 :31] <dyl1768> this fucking hot boy, blong hair, blue eyes, getting sucked and jerked off:)… he's just very cute I think
[21:32] <GigaBoy19> about 12?
01[21:32 ] <dyl1768> yeah
01[21:32] <dyl1768> you familiar with it?
01 [21: 2] <dyll768> :D
01[21:32] <GigaBoy19> yeh i've got a few vids of him
01[21:32] <dyl1768> ooooooo!
01 [21 :32] <dyl1768> :D
01 [21 :32] <dyl1768> *boing*
01 [21 :32] <dyl1768> lol
[21 :32] <GigaBoy 19> yeh he's cute
[21:32] <GigaBoyl9> hung
[21 :32] <GigaBoy 19> cums
01 [21 :33] <dy11768> hell ya…totally!
01 [21 :33] <dyl1768> I would give anything to suck him off… not sure if it's his dad who jerks him or what…I have the one where he's jerking off while sitting on his brown haired friend in the bed…and the one of his little brother showing his asshole…that's cool:)
[21 :35] <GigaBoy19> hmm not sure i've seen that
[21 :35] <GigaBoy19> the vid i'm thinking of looks kind of 90's
01 [21 :35] <dyl1768> well I'm assuming it's his little brother. he's laying in the same bed and looks kind of like him except he has darker hair….yeah exactly…that's it.
…
01[22:01] <dyl1768> well if you want any of my files, just hit me up when you come on gigatribe…and I'd love to download andy
01[22:02] <GigaBoy 19> ok
01[22:02] <dyl1768> dylanjohnson6992

**d. Batliner attempts to distribute child pornography**

On July 20, 2011, the IP address from which "dyl1669" contacted #Littleboysexchannel had thirty videos available for downloading by a peer-to-peer file

sharing program. The videos were identified by their "SHA" values, a unique digital identifier analogous to DNA. Each of the thirty videos had been previously recovered by the National Center for Missing and Exploited Children and positively identified as child pornography.

The evidence of attempted distribution is corroborated by admissions by Batliner that he previously ran a website dedicated to the distribution of child pornography:

> 01 [18:47] <dyll669> when I was in high school, I created a website that became super popular like overnight and it slowly evolved in to a child porn site and I was swimming in kiddie porn morning noon and night (it was totally addictive lol) but I couldn't stop…I felt like I was at war with the world because aU these anti-pedo groups were constantly deleting the site.
> [18:48] <GIGAboys> did you get the same stuff that goes around or did you get some good private stuff?
> 01[18:48] <dyl1 669> I had a method where I knew I could stay up for 5 days…and then be deleted
> [18:48] <GIGAboys> wow
> 01[18:48] <dyl1669> so I Was constantly changing locations
> [18:48] <GIGAboys> bow would they even fmd you
> 01[18:48] <dyl1669> and I had a bunch ofreferrers…I had contacts with other websites…I had a system worked out with them…I gave them a piece of code that they'd put on the URL and I just had to change the new location on a central server…and it would then update all the incoming links
> 01[ 18:49] <dy11669> I was getting about 4 thousand unique visitors a day
> 01 [18:50] <dyl1669> 2 million unique visitors by the time I fmally walked away from it
> 01(18:51) <dyll669> I would trade porn by the pound
> 01 [ 18:51] <dy 11 669> by the gigabyte basically
> 01 [ 18:51] <dyl1669> people would email me and we'd trade x gigs of their porn for x gigs of mine
> [18:51] <GIGAboys> wow awesome
> 01 [18:51] <dyll669> 20 gigs of yours for 20 gigs of mine
> 0 I [ 18:51] <dy 11669> that kind of thing…and then I'd get the new shipment of porn and sort through it
> [18:52] <GIGAboys> :p
> 01[18:52] <dyll669> about 80% was usually garbage, but 20% was gold

## II.

## ARGUMENT

**A.     Defendant's Motion for Discovery**

As of the date of this response, the Government has produced all appropriate discovery to Defendant.  The Government has not received any reciprocal discovery.  The Government will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. ' 3500 et seq., and Rule 16 of the Federal Rules of Criminal Procedure.

### 1.     Items the Government Has Provided or Will Voluntarily Provide

a.     Pursuant to **Rule 16(a)(1)(A)** and **(B)** of the Federal Rules of Criminal Procedure, the Government will disclose and make available for inspection, copying or photographing, any relevant written or recorded statements made by the Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government and that are relevant to the crime charged; that portion of any written record containing the substance of any relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known to the Defendant to be a Government agent; and recorded testimony of the Defendant before a grand jury which relates to the offense charged.  The Government shall also disclose the substance of any other relevant oral statement made by the Defendant whether before or after arrest in response to interrogation by any person then known by the Defendant to be a Government agent if the Government intends to use that statement at trial.

b.     Pursuant to **Rule 16(a)(1)(D)**, the Government will furnish Defendant with a copy of his prior criminal record, namely, his rap sheet.

c.     Pursuant to **Rule 16(a)(1)(E)**, the Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, that are within the possession,

**1 2 3 4** custody or control of the Government, and that are material to the preparation of Defendant's defense, are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant3. Defense counsel will be permitted to view the videos and images at issue.

**5 6 7 8 9 10 11**    d.    Pursuant to **Rule 16(a)(1)(F)**, the Government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, and that are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial.4

**12 13 14**    e.    Pursuant to **Rule 16(a)(1)(G)**, the Government will provide Defendant with a written summary of testimony of all experts that the Government intends to introduce under Rules 702, 703, and 705 of the Federal Rules of Evidence.

**15 16 17 18 19 20**    f.    The Government is aware of its duty under Giglio v. United States, 405 U.S. 150 (1972), and will disclose the terms of all agreements (or any other inducements) with cooperating witnesses or Defendant, if any are entered into, at the time that the identities of these individuals is revealed. Specifically, in this regard, the Government will turn over plea agreements, cooperating individual agreements, and payments for information, services and/or expenses.

**21 22 23 24 25**    g.    The Government will disclose any record of prior criminal convictions, if any, that could be used to impeach a Government witness prior to any such witness' testimony. However, the Government is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). When disclosing such information,

---

3 Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

4 The Government does not have "to disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

1 disclosure need only extend to witnesses the Government intends to call in its case-in-
2 chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v.
3 Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

  h. The Government will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the Counsel for the United States is uncertain whether certain incriminating information in the personnel files is Amaterial,@ the information will be submitted to the Court for an in camera inspection and review.

  i. The Government will provide a description of the prior bad acts, if any exist, of the Government witnesses pursuant to **Rule 608(b)** of the Federal Rule of Evidence to the extent that the information within the Government's possession reasonably relates to the credibility of a witness.

  j. The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence. The Government agrees to disclose this information one week prior to trial.

  k. The Government will disclose all relevant search warrants that have been executed in this case, as well as the fruits of all searches conducted in this case.

  l. The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act, 18 U.S.C. ' 3500, and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.

### 3. Items that Go Beyond the Mandate of Rule 16, Brady, the Jencks Act and Giglio

Defendant are not entitled to rough notes taken during their statements to arresting officers. See Palermo v. United States, 360 U.S. 343, 355 n.12 (1959); United States v. Alvarez, 86 F.3d 901, 904 n.2 (9th Cir. 1996). Similarly, they are not entitled to an order directing the Government to make and produce a transcript of his statements. See United States v. Zavala, 839 F.2d 523, 528 (9th Cir. 1988).

## III.
## DEFENDANT'S MOTION TO GRANT LEAVE TO FILE FURTHER MOTIONS

The Government does not oppose this motion.

## IV.
## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

The United States hereby requests Defendant produce all materials that the United States may be entitled pursuant to Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.

### A. Rule 16(b) Discovery

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the Government moves this Court for an Order compelling Defendant to disclose or produce for inspection no later than fourteen days before trial: (a) books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within their counsels' possession, custody or control and which they intend to introduce as evidence-in-chief at the trial; (b) any results or reports of physical or mental examination and of scientific tests or experiments made in connection with the particular case, or copies thereof, within their possession or control, which they intend to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intend to call at the trial when the results or reports relate to their testimony; and (c) a written summary of the opinions of the witnesses, the bases and reasons therefore, and the witnesses'

qualifications that Defendant intend to introduce under Rules 702, 703, and 705 of the Federal Rules of Evidence at trial.

**B.** **Rule 26.2 Discovery**

Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except Defendant's statements. The time frame established by the rule requires Defendant to disclose such statements after such witnesses testify, as in the Jencks Act under 18 U.S.C. ' 3500. Pursuant to Rule 26.2, the Government requests that this Court issue an Order compelling Defendant to produce all prior statements of defense witnesses, including those memorialized in non-written form such as in tape recordings, by a reasonable date before trial.

## VII.
## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's Motions for Discovery be denied and that its Motion for Reciprocal Discovery be granted.

DATED: July 10, 2015　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　LAURA E. DUFFY
　　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　　s/Scott T. Jones
　　　　　　　　　　　　　　　　　　　　　　Scott T. Jones
　　　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney